## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## (AT LOUISVILLE)

MARIA BENITEZ and LUCRETIA HOCKER,
On Behalf of Themselves And All Others
Similarly Situated,

                              Plaintiffs,

     vs.

HUMANA, INC., MICHAEL B.
McCALLISTER, JAMES H. BLOEM, and
JOHN DOES 1-20,

                              Defendants.

**Civil Action:  3:08cv-211-H**

## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT
## INCOME SECURITY ACT ("ERISA")

Plaintiffs, participants in the Humana Retirement and Savings Plan (the "Plan"), covering substantially all employees of Humana Inc. and its subsidiaries (collectively "Humana" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

## INTROUCTION

1.     This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including Humana, on behalf of Participants in and beneficiaries of the Plan.

2.     Throughout the Class Period (February 4, 2008 and the present), the Plan invested in Humana common stock ("Humana Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3.     Plaintiffs' claims arise from the failure of Defendants, who are Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the

required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4.     Specifically, Plaintiffs allege in Count I that Defendants breached their fiduciary duties to Plaintiffs in violation of ERISA by failing to prudently and loyally manage the Plan's investment in Humana Stock by continuing to offer Company Stock as an investment option, and to make contributions in Company Stock, instead of suitable short-term options within the Plan, when the stock no longer was a prudent investment for Participants' retirement savings.   In Count II, Plaintiffs allege that Defendants who communicated with Participants regarding the Plan's assets, or had a duty to do so, failed to provide Participants with complete and accurate information regarding Humana Stock sufficient to advise Participants of the true risks of investing their retirement savings in Company Stock.   In Count III, Plaintiffs allege that Defendants, responsible for the selection, removal, and, thus, monitoring of the Plan's fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.   In Count IV, Plaintiffs allege that Defendants breached their duties and responsibilities to avoid conflicts of interest and serve the interests of the Participants in and beneficiaries of the Plan with undivided loyalty.   In Count V, Plaintiffs allege that Defendants breached their duties and responsibilities as co-fiduciaries in the manner and to the extent set forth in the Count.   Finally, in Count VI, Plaintiffs state a claim against Humana for knowing participation in the fiduciary breaches alleged herein.

5.     This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).   In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs seek

other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

6.     As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants.  Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

7.     Because Plaintiffs' claims apply to the Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiffs to sue for plan-wide relief for breach of fiduciary duty, Plaintiffs bring this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period.  Plaintiffs also bring this action as a participant seeking Plan-wide relief for breach of fiduciary duty on behalf of the Plan.

8.     In addition, because the information and documents on which Plaintiffs' claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiffs' allegations are by necessity upon information and belief.  At such time as Plaintiffs have had the opportunity to conduct additional discovery, Plaintiffs will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

9.     ***Subject Matter Jurisdiction.***  This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l).  In

addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

10.     ***Personal Jurisdiction***.   ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).   All of Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them.   This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the Western District of Kentucky.

11.     ***Venue***.   Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiffs

12.     ***Plaintiff Maria Benitez*** is a resident of Houston, Texas.   Plaintiff is a former Humana employee and is a participant in the Plan.

13.     ***Plaintiff Lucretia Hocker*** is a resident of Bloomfield, Kentucky.   Plaintiff is a former Humana employee and is a participant in the Plan.

### Defendants

14.     ***Defendant Humana*** is one of the nation's largest publicly traded health and supplemental benefits companies.   The Company is a full-service benefits solutions company, offering a wide array of health and supplemental benefit plans for employer groups, government benefit programs, and individuals.

15.     Throughout the Class Period, Humana's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

16.     *Defendant  Michael B. McCallister ("McCallister")* served, at all relevant times, as the Company's Chief Executive Officer.  During the Class Period, defendant McCallister was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

17.     *Defendant James H. Bloem ("Bloem")* served, at all relevant times, as the Company's Chief Financial Officer.  During the Class Period, defendant Humana was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.  Defendant Bloem signed the Company's Form 11-Ks, dated June 22, 2007 for Humana Retirement and Savings Plan and the Humana Puerto Rico 1165(E) Retirement Plan.

18.     *Defendants John Does 1-20 ("John Does 1-20")* are residents of the United

States and are or were fiduciaries of the Plan during the Class Period.  These defendants whose

identities are currently unknown to Plaintiffs, may include additional Humana employees.  Once

their identities are ascertained, Plaintiffs will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of

persons similarly situated (the "Class"):

> All persons who are participants in or beneficiaries of the Plan at
> any time between February 4, 2008 and the present (the "Class
> Period") and whose accounts included investments in Humana
> Stock.

20.     Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the

Class because:

21.     ***Numerosity***.   The members of the Class are so numerous that joinder of all

members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at

this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are,

at a minimum, over ten thousand members of the Class who participated in, or were beneficiaries

of, the Plan during the Class Period.

22.     ***Commonality***.  Common questions of law and fact exist as to all members of the

Class and predominate over any questions affecting solely individual members of the Class.

Among the questions of law and fact common to the Class are:

(a)     Whether Defendants acted as fiduciaries;

(b)     Whether Defendants breached their fiduciary duties to the Plan, Plaintiffs

and members of the Class by failing to act prudently and solely in the interests of the Plan, and

the Plan's Participants and beneficiaries;

(c)     Whether Defendants violated ERISA;

(d)     Whether the Plan suffered a loss and, by extension, members of the Class sustained a diminution in vested benefits, and

(d)     What is the proper measure of loss to the Plan and subsequent allocation of vested benefits to the Plan's Participants.

23.     **_Typicality_.**  Plaintiffs' claims are typical of the claims of the members of the Class because the Plan, Plaintiffs and the other members of the Class, each sustained a diminution in vested benefits arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

24.     **_Adequacy_.**  Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

25.     Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

26.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Plan and the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the

Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLAN

27.     The Plan is an "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

28.     The Plan is a legal entity that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

29.     In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.  Rather, Plaintiffs request relief for the benefit of the Plan and for the benefit of its Participants.

30.     The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

31.     The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

32.     The action also includes the Humana Puerto Rico 1165(e) Retirement Plan.

**Plan Fiduciaries**

33.     *Named Fiduciaries*.   ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).   The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.   ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

34.     *De Facto Fiduciaries*.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.   Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

35.     Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing Plan documents, through their conduct, and under ERISA.

36.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

37.     Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## HUMANA STOCK WAS AN
## IMPRUDENT INVESTMENT FOR THE PLAN

38.     Defendant Humana provides various health and supplemental benefit plans for employer groups, government benefit programs, and individuals in the United States.

39.     The Class Period begins on February 4, 2008.  On that date, the Company issued a press release announcing its financial results for the fourth quarter of 2007 and raising its earnings estimates for the full year 2008.  For the full year 2008, the Company stated that it expected earnings per share ("EPS") in the range of $5.35 to $5.55, while EPS for the first quarter of 2008 was expected to be in the range of $0.80 to $0.85.

40.     On a conference call later that same day, Defendants reiterated the Company's anticipated EPS for 2008.  Commenting on the Company's outlook, defendant McCallister stated, in pertinent part, as follows:

> [T]his morning we raised our 200[8] earnings per share guidance to a range of $5.35 to $5.55, with continued membership growth and strong operational execution driving these results.
>
> * * *
>
> We believe the 2007 achievements just described position us well for 2008, both in terms of the existing environment and future trends.

41.     Defendant Bloem also commented on the Company's outlook, stating, in pertinent part, as follows:

> The primary factor driving this less-pronounced pattern is the composition of our 2008 PDP membership, which has changed from last year. We have nearly 300,000 fewer low-income senior members effective January 1, with a higher percentage of non-low-income seniors in our Enhanced plan and a lower percentage of non-low income senior members in the Complete plan.  The decline in the percentage of low income members is particularly relevant in analyzing the quarterly patterns, because these seniors have a steeper declining slope to their quarterly benefits ratio progression versus the remaining Part D members, with the first quarter ratio much higher on low incomes than the overall average and the fourth quarter much lower.  Consequently, our lower membership in the low-income block is anticipated to lower the quarterly benefits ratio pattern in the first half of the year and raise it slightly in the back half of the year compared to 2007.
>
> * * *
>
> So here is the twofold take away. The composition of our PDP membership will have a significant impact on the quarterly pattern of our Medicare benefits ratio without necessarily impacting the full year ratio.  And then secondly, the 2008 quarterly Medicare benefits ratio pattern is expected to drive our quarterly earnings per share for this year.
>
> * * *
>
> Finally, also as expected, prescription drug trends were in the mid to high single digits.  Based on our ongoing deep-dive analysis of benefit expense trend factors, we do not foresee any significant changes to the components of our cost trends as we move into 2008, as is stated in this morning's press release.  So accordingly, we remain confident of our ability to meet our 2008 Commercial pretax earnings target of $280 million to $300 million and we look forward to sharing our progress with you each quarter.

42.     Following the Company's earnings announcement, Carl McDonald, an equity analyst at Oppenheimer & Co., wrote that "Humana seems well positioned for EPS upside in 2008."

43.     On February 12, 2008, defendant Bloem participated in the UBS Global Healthcare Services Conference in New York, NY and reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

44.     On February 28, 2008, defendant McCallister participated in the Merrill Lynch Investor Meetings in Toronto, Canada, and reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

45.     The statements referenced above were materially false and misleading because Defendants failed to disclose:

(i)     that the Company was unable to properly calculate the prescription drug costs of its newly acquired members;

(ii)     that the Company's costs associated with its prescription drug plans had dramatically increased; and

(iii)     that as a result of the foregoing, Defendants' statements concerning the Company's anticipated EPS for the first quarter of 2008 and full year 2008 were lacking in a reasonable basis at all relevant times and were therefore materially false and misleading.

46.     Then, on March 12, 2008, before the market opened for trading, the Company shocked investors (which included Plan Participants) by issuing a press release headlined "Humana Revises Earnings Guidance."   In the press release, the Company disclosed that it would be revising the financial guidance that it had given to investors just five weeks prior. Specifically, the Company said that its first quarter 2008 EPS were now expected to be in the range of $0.44 to $0.46, versus previous guidance of $0.80 to $0.85 per share.  For the full year 2008, the Company now expected EPS to be in the range of $4.00 to $4.25 per share, versus previous guidance of $5.35 to $5.55 per share.  The Company attributed these revised earnings to "updated projections for the company's FY08 stand-alone PDP [Prescription Drug Plan] financial performance."

47.     The press release further explained that the revised projections are "based upon analysis of pharmacy claims through February 2008.  Higher-than anticipated claims volumes for the stand-alone PDPs year to date are reflective of a combination of factors including: Enhanced Plan actuarial assumptions versus experience, Enhanced Plan new member experience, and Standard Plan member mix."

48.     Following this announcement, shares of Humana stock declined $6.50 per share to close at $40.88 per share on extraordinarily high trading volume.

49.     In an interview with *Bloomberg*, Sheryl Skolnick, an analyst with CRT Capital Group, was quoted as saying:

> Humana priced their drug plan too low in order to gain market share, and we're seeing the result of that today.  They are offering a plan with zero co-pays for a 90- day supply of generics through RightSource, their mail order.   And when you tell seniors something is free, they keep coming back again and again.

### THE LAW UNDER ERISA

50.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

51.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

52.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the

interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."  They entail, among other things:

(a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in Humana Stock, to ensure that each investment is a suitable option for the Plan;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

54.     ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following

circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

55.     Plaintiffs therefore bring this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

### DEFENDANTS' FIDUCIARY STATUS

56.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

57.     During the Class Period, all of Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

58.     During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants

via the Company's website and Plan-related documents which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

59.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

## COUNT I

60.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

61.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

62.     As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

63.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in Humana Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan.  Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

64.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

65.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in Humana Stock.  Further, given that such a high concentration of the assets of the Plan was invested in the stock of a single company (Humana), Defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All categories of Defendants failed to implement any such strategy.

66.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

67.     Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to

the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

68.     Specifically, at least some of the Defendants had actual knowledge of Humana's corporate malfeasance and questionable reporting and business.  In addition, in light of their high-ranking positions as high ranking officers at the Company, Defendants had/should have had constructive knowledge of these activities.

69.     Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of Humana Stock were not being prudently managed.  They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in Humana Stock, despite inarguably having knowledge of such breaches.

70.     Furthermore, through their own failure to prudently and loyally manage the Plan's investment in Humana Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in Humana Stock.

71.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

72.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

74.     As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating Plan documents and information to Participants regarding the Plan and assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

75.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in Humana Stock.

76.     Because a substantial percentage of the Plan's assets were invested in Humana Stock, and Defendants chose to invest overwhelmingly in Humana Stock, such investment carried with it an inherently high degree of risk.  This inherent risk made Defendants' duty to provide complete and accurate information particularly important with respect to Company Stock.

77.     Specifically, Humana, through its officers and directors issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Humana Stock and the financial health of the Company.

78.     Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by Humana, through its officers.  In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in Humana Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Humana Stock as required by ERISA.

79.     In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication.  Defendants, however, failed to disclose any information to Plan Participants regarding Humana's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

80.     Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding Humana Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of Humana Stock and the prudence of investing retirement contributions in the Company's stock.

81.     These failures were particularly devastating to the Plan and the Participants, as a significant percentage of the Plan's assets were invested in Humana Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

82.     In addition, Humana and the other Defendants knew or should have known that information they possessed regarding the true condition of Humana would have an extreme impact on the Plan.  Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

83.     As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Humana Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Humana Stock was an inherently unsuitable and inappropriate investment option for their Plan accounts.  Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

84.     As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses.  If these Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

85.     Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

86.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

87.     At all relevant times, as alleged above, Humana and Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Humana and Defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries.  The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. The monitoring fiduciaries, Humana and Defendants had the duty to:

(a)     Ensure that the appointed Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)     Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

(c)     Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)     Ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

(e)     Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)     Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

88.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.   In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

89.     Humana and Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

90.     Humana and Defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plan.  However, in doing so, the Trustee shall be subject to the direction and guidance of Humana.

91.     Humana and the other Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering Humana Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in Humana Stock when it no longer was prudent to do so.  Despite this knowledge, Humana and Defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

92.     Humana and Defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

93.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

94.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

95.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

96.     At all relevant times, as alleged above, all Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

97.     ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

98.     Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries.  These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Humana stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

99.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Humana Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Humana Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's

inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

100.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

101.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

102.     ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

103.     As alleged herein, Humana, through its officers and employees withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these Defendants as a matter of law.  In addition, as alleged herein on information and belief, Humana and the other Defendants participated in and/or knew about the Company's misrepresentations regarding the Company's financial condition.  Thus, these Defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Humana Stock as an investment for the Participants' retirement assets.

104.    Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Humana Stock during the Class Period.  They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in Humana Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, these same Defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Humana Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

105.    In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying the significance of Humana's problems and further concealing such practices from Participants and the market as a whole.

106.    In addition, Defendants enabled the imprudent asset management decisions of any and all other Defendant -- including any appointed Plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper practices, so that these other Defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Humana Stock.  In so doing, these Defendants breached ERISA § 405(a)(l)(B).

107.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed Plan fiduciaries' imprudent management of the Humana Stock in the Plan.

108.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

109.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

110.    Plaintiffs incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

111.    To the extent that Humana is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Humana knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

112.    Humana benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing Humana Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of Humana providing the market with materially misleading statements and omissions.  Accordingly, Humana may be required to disgorge this benefit or a constructive trust

should be imposed on treasury shares of Humana Stock which would have been contributed to the Plan, but for Humana's participation in the foregoing breaches of fiduciary duty.

## **CAUSATION**

113. The Plan suffered millions of dollars in losses in plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in Humana Stock during the Class Period, in breach of Defendants' fiduciary duties. These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

114. Defendants are responsible for losses in Plan benefits caused by the Participants' direction of investment in Humana Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants concealed material, non-public facts from Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in Humana Stock, and Defendants remain liable under ERISA for losses caused by such investment.

115. Defendants are also responsible for all losses in Plan benefits caused by the investment of the Plan's Company Contributions in Humana Stock during the Class Period, as Defendants controlled the investment, and the investment was imprudent.

116. Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Humana Stock, eliminating such Company Stock as an investment alternative when it became

imprudent, and divesting the Plan from its holdings of Humana Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

117.    Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiffs relied to their detriment on the misstatements and omissions that Defendants made to Plan Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

118.    Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in Humana Stock during the Class Period.   As a consequence of Defendants' breaches, the Plan suffered significant losses.

119.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

120.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

121.     Plaintiffs and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

122.     Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

123.     ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions.  In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

124.     Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite.  As a consequence, Participants in the Plan did not have informed control over the portion of the Plan's assets that

were invested in Humana Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

125.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, Plaintiffs and the Class for relief stemming from Participants' decisions to invest contributions in Humana Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

126.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.    Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plan suffers a loss.    Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

127.    Finally, Defendants remain liable for Plan losses that pertain to Humana Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.    An Order compelling Defendants to make good to the Plan all losses to the

Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

        D.      Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of fiduciary duty breach;

        E.      An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

        F.      An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Humana Stock;

        G.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

        H.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

        I.      An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

        J.      An Order for equitable restitution and other appropriate equitable monetary relief against Defendants.

Dated:  April 22, 2008

                              __ s/ J. Guthrie True_____
                              J. Guthrie True, Esq.
                              **Johnson, True & Guarnieri, LLP**
                              326 West Main Street
                              Frankfort, KY  40601
                              Telephone:  502-875-6000
                              Facsimile:  502-875-6008
                              gtrue@jtgattorneys.com

Thomas J. McKenna, Esq.
**Gainey & McKenna**
295 Madison Avenue, 4th Floor
New York, New York 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
tjmckenna@gaineyandmckenna.com

*Attorneys for Plaintiffs*